J-S10015-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH JAMES NEWMAN JR. | : | |
| | : | |
| Appellant | : | No. 1162 MDA 2020 |

Appeal from the PCRA Order Entered August 14, 2020
In the Court of Common Pleas of Clinton County Criminal Division at
No(s):  CP-18-CR-0000635-2016

BEFORE:   MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                     **FILED JUNE 15, 2021**

Joseph James Newman, Jr. (Appellant) appeals from the order denying his first petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

This Court previously summarized the underlying facts as follows:

> On August 22, 2016, Tim Moore, the president of the Outsiders Motorcycle Club (the Club), a non-profit organization, encountered Appellant and Appellant's friend James Schmidtberg at a Sheetz convenience store around 8:30 p.m.  Appellant is a former member of the Club with whom Moore had bad blood. According to Moore, Appellant appeared intoxicated and shouted at Moore in a threatening manner, telling Moore that Moore better get 12-15 people together because Appellant, his boss, and 12 other men were "going to end things tonight."
>
> Later that evening, Moore and several members of the Club, including Gary Lucas, gathered in Mill Hall Borough near the

---

[*] Retired Senior Judge assigned to the Superior Court.

residence of Moore's daughter. Appellant resided close to this location.

After they arrived, Moore and Lucas observed Appellant, Schmidtberg, and Mike Bingaman walking up Arch Street towards them. Lucas walked towards the trio, intending to diffuse the situation, and ended up standing face to face with Appellant, with about a foot and one-half between them. Lucas smelled alcohol on Appellant.

Appellant pulled out a black semi-automatic pistol and Moore and Lucas heard Appellant pull the action. According to Lucas, Appellant pointed the gun at Lucas's forehead, and all Lucas could see was the black hole at the end of the barrel. Appellant told Lucas "it's going to end tonight," and fired a shot in the air.

Lucas then struggled with Appellant over the gun. Appellant regained control of the gun, pointed it back towards Lucas's head, and fired a second time. Moore initially thought Appellant shot Lucas in the head because of where Appellant had the gun pointed prior to shooting, but Moore realized the shot went past Lucas's head. Lucas testified that he had turned to his right to avoid the shot and the shot sailed past his left ear. . . . He was not injured but sustained ringing in his left ear that still persisted at the time of trial.

After Appellant fired the gun the second time, Lucas tussled with Appellant over the gun while Appellant shouted at Bingaman to shoot Lucas in the knee. Bingaman fired two shots from his gun into the ground near Lucas's feet. Meanwhile, Lucas threw Appellant's gun off to the side, where the police later recovered it.

*Commonwealth v. Newman*, 201 A.3d 836, at \*\*1-3 (Pa. Super. 2018)

(unpublished memorandum) (record citations omitted).

The Commonwealth charged Appellant with a variety of crimes. Appellant proceeded to a jury trial, where he was represented by Hugh Taylor, III, Esquire (trial counsel). On August 11, 2017, the jury found Appellant guilty of two counts each of aggravated assault and simple assault, as well as

one count each of recklessly endangering another person, firearms not to be carried without a license, and persons not to possess firearms.

On October 16, 2017, the trial court sentenced Appellant to an aggregate 14½ to 29 years in prison. Appellant, represented by new counsel, filed a direct appeal. This Court affirmed Appellant's judgment of sentence on November 9, 2018. *See Newman*, *supra*. Appellant did not seek allowance of appeal with the Pennsylvania Supreme Court.

On March 8, 2019, Appellant *pro se* filed the underlying PCRA petition. The court appointed counsel, who filed an amended petition on June 28, 2019. After a number of continuances, the PCRA court conducted an evidentiary hearing on February 6, 2020. The court heard testimony from Appellant, trial counsel, Pennsylvania State Trooper Stephen Dunkle, and Nancy Ducharme (Ducharme), who was Appellant's girlfriend at the time of the crimes.

By opinion and order entered August 14, 2020, the PCRA court denied relief. Appellant timely filed a notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant now presents three issues for our review:

I. Whether trial counsel was ineffective for failing to request a mistrial or curative instruction when [Appellant's] electronic monitoring device audibly activated during trial[?]

II. Whether trial counsel was ineffective for failing to call Nancy Ducharme as an exculpatory witness[?]

III. Whether trial counsel was ineffective for failing to introduce the *crimen falsi* conviction of Commonwealth witness Gary Lucas[?]

- 3 -

Appellant's Brief at 4.

Preliminarily, we recognize:

Appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of whether the PCRA court's determination is supported by the record and free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding. In contrast, we review the PCRA court's legal conclusions *de novo*.

**Commonwealth v. Maxwell**, 232 A.3d 739, 744 (Pa. Super. 2020) (*en banc*) (citations omitted).

All PCRA petitions, including a second or subsequent petition, must be filed within one year of the date the petitioner's judgment of sentence becomes final. 42 Pa.C.S.A. § 9545(b)(1); **see also Commonwealth v. Chester**, 895 A.2d 520, 522 (Pa. 2006) (neither this Court nor the PCRA court has jurisdiction over an untimely petition). Here, Appellant timely filed his PCRA petition on March 8, 2019, well before the expiration of the PCRA's one-year time bar on December 9, 2019.

In each of his issues, Appellant alleges trial counsel rendered ineffective assistance. Pennsylvania law presumes counsel is effective; a PCRA petitioner bears the burden of proving otherwise. **Commonwealth v. Brown**, 196 A.3d 130, 150 (Pa. 2018).

[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from[, *inter alia*,] the "ineffective assistance of counsel

- 4 -

which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

**Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014) (quoting 42 Pa.C.S.A. § 9543(a)(2)(ii)).

To establish a claim of ineffectiveness, a PCRA petitioner must plead and prove:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. **Commonwealth v. Chmiel**, 30 A.3d 1111, 1127 (Pa. 2011) (employing ineffective assistance of counsel test from **Commonwealth v. Pierce**, 527 A.2d 973, 975-76 (Pa. 1987)). . . . Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. Finally, because a PCRA petitioner must establish all the **Pierce** prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis.

**Commonwealth v. Treiber**, 121 A.3d 435, 445 (Pa. 2015) (citations modified); **see also Commonwealth v. Lesko**, 15 A.3d 345, 380 (Pa. 2011) ("When evaluating ineffectiveness claims, judicial scrutiny of counsel's performance must be highly deferential." (citation omitted)).

Appellant first argues trial counsel rendered ineffective assistance by failing to request a mistrial, or request a curative jury instruction, after Appellant's electronic ankle monitoring device (ankle monitor) purportedly

made a sound heard by the jury during trial.[1]  ***See*** Appellant's Brief at 12-16.

Appellant contends the ankle monitor "is tantamount to shackles as far as due

process . . . is concerned," and "carries with it an obvious and indelible

implication to the jurors."  ***Id.*** at 16.  In support, Appellant primarily relies on

***Commonwealth v. Cruz***, 311 A.2d 691 (Pa. Super. 1973), where we stated:

> In any case where the trial judge, in the exercise of sound
> discretion, determines that the defendant must be handcuffed or
> shackled, it is of the essence that he instruct the jury in the
> clearest and most emphatic terms . . . that it give such restraint
> no consideration whatever in assessing the proofs and
> determining guilt.  This is the least that can be done toward
> insuring a fair trial.  It may be doubted whether any jury, even
> with the best of cautionary instructions, can ever dismiss from its
> mind that the accused has appeared before it in handcuffs or
> chains.

***Id.*** at 692 (citation omitted).

Contrary to Appellant's claim, we find ***Cruz*** distinguishable and

unavailing.  Initially, Appellant has failed to provide any evidence, or citation

to the record, to support his general and conclusory claim that the jury was

aware Appellant was wearing an ankle monitor, let alone that the jury heard

the device make a sound during trial.  ***See, e.g., Commonwealth v.***

_____

[1] At the PCRA hearing, Appellant claimed the ankle monitor audibly beeped at
trial in the presence of the jury.  N.T., 2/6/20, at 5 (Appellant stating "[the
jury] saw it[, *i.e.*, the ankle monitor,] and heard it because the judge wanted
to know what that noise was.  I lifted my leg and pointed to it in [the jury's]
presence.").  However, Appellant concedes "it is unclear from the trial
transcript at which point the ankle monitor began beeping."  Appellant's Brief
at 15.  Further, there is nothing in the record to corroborate Appellant's claim
he showed his ankle monitor to the jury.

**Beshore**, 916 A.2d 1128, 1140 (Pa. Super. 2007) (*en banc*) (failure to properly develop an argument in an appellate brief, including proper citation to the record, results in waiver); **Commonwealth v. Kearney**, 92 A.3d 51, 66-67 (Pa. Super. 2014) (noting it is not the responsibility of this Court to scour the record to find evidence to support an argument).  Further, Appellant admitted he never asked trial counsel to take any action at the time the ankle monitor allegedly beeped.  N.T., 2/6/20, at 13.

In addition, under the second prong of the ineffectiveness test, Appellant failed to establish how the alleged ankle monitor incident prejudiced him.  **See Chmiel**, **supra**.  Indeed, we conclude there is no reasonable probability the jury would have returned a different verdict if trial counsel had (a) moved for a mistrial, and/or (b) requested a curative instruction.  In this regard, we are persuaded by the PCRA court's assertion that "[t]he evidence in this case was overwhelming.  The jury heard directly from the victim, a co-defendant and, finally, a completely neutral neighbor, who all witnessed [Appellant] raise the firearm and discharge it with the bullet passing close to the victim's head."  PCRA Court Opinion, 8/14/20, at 6 (unnumbered); **see also Commonwealth v. Bishop**, 936 A.2d 1136, 1140 (Pa. Super. 2007) (stating where "the evidence of guilt is overwhelming, counsel's purported ineffectiveness fails the prejudice prong." (citation omitted)).

Accordingly, there is no arguable merit to this first issue, and Appellant's ineffectiveness claim fails. *See Chmiel*, *supra*; *Treiber*, *supra* (failure to prove any element of ineffectiveness test is fatal to a PCRA petitioner's claim).

Next, Appellant asserts trial counsel rendered ineffective assistance by failing to call Ducharme, Appellant's former girlfriend, as an exculpatory witness at trial. *See* Appellant's Brief at 16-18. Appellant claims "[Ducharme's] testimony would have been that she was with [Appellant] the entire day [of the incident], and that she did not see him possess or discharge a firearm." *Id.* at 17. Appellant argues Ducharme's testimony was particularly important to the defense "given the lack of other unbiased exculpatory testimony." *Id.* at 18.

To prevail on a claim alleging ineffective assistance of counsel for failure to call a potential witness, a PCRA petitioner must establish:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew, or should have known, of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Miller*, 231 A.3d 981, 992 (Pa. Super. 2020) (citations omitted).

Here, the PCRA court detailed its determination that there was no merit to Appellant's second claim of ineffectiveness, stating:

> Trial counsel had received an email from [Appellant's] girlfriend approximately one week before [the] jury trial advising that Nancy Ducharme was not to be trusted and that trial counsel was not to call [Ducharme] because she was dating someone who

- 8 -

[Appellant] viewed as being adverse. Trial counsel further felt that testimony of other witnesses would have [been] viewed by the jury as being much stronger. Trial counsel also decided not [to] call Nancy Ducharme[, on the final day of trial,] due to the lateness of the trial and the fact that it was a Friday. Trial counsel did not want the jury to be out too late and noted that the jury was out until after 10:00 p.m. after they began their deliberations. Finally, trial counsel believed that Ms. Ducharme was not a strong witness in his opinion.

Testimony elicited at the time of the [PCRA] hearing also confirmed that Nancy Ducharme recently suffered a double brain hemorrhage and stroke and that her memory had been substantially affected. Now recalling that she was with [Appellant] all day on the date of the crime . . ., [Ducharme] acknowledged that she did not provide police with a statement or with her eyewitness account until months later. [Ducharme] further testified that at various times she was "property of" different motorcycle club members, some of whom were members of the club [Appellant] belonged to and others who were members of a rival club. If called to testify[, Ducharme] would have testified that she did not see [Appellant] possess a firearm [on the day of the crime].

For these reasons, the court finds that trial counsel's decision not to call Nancy Ducharme as a defense witness was reasonable under the circumstances. Trial counsel anticipated that [Ducharme's] testimony would not have been consistent with her prior statements and that she would have been extremely vulnerable to cross-examination at trial.

. . . Trial counsel's decision not to call Nancy Ducharme as a defense witness was tactically sound. Again, the court points to the overwhelming weight of the evidence when considering the testimony of the victim[, Appellant's] co-defendant, and [Appellant's] neutral neighbor, [all of whom] witnessed [Appellant] raise and discharge the firearm in the direction of the victim.

PCRA Court Opinion, 8/14/20, at 7-8 (unnumbered) (some capitalization omitted).

The record supports the PCRA court's rationale. We therefore agree that Appellant failed to establish trial counsel's ineffectiveness for failing to call Ducharme as a defense witness at trial. Thus, Appellant's second issue lacks merit.

In his third and final issue, Appellant contends trial counsel was ineffective for failing to introduce evidence that Lucas, a chief Commonwealth witness, had been convicted, decades prior, of a "*crimen falsi*" offense, *i.e.*, burglary. **See** Appellant's Brief at 18-21. Appellant argues:

> Lucas was . . . the alleged victim in this case. Given the inconsistencies and other aspects of [] Lucas's testimony, and the importance of determining his credibility, the probative value of introducing his burglary conviction far outweighed any prejudicial effect.

**Id.** at 19.

Generally, except for evidence relating to a conviction for a *crimen falsi* crime, **see** Pa.R.E. 609, "the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct[.]" Pa.R.E. 608(b)(1). Rule of Evidence 609 provides in relevant part: "For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime . . . must be admitted if it involved dishonesty or false statement." Pa.R.E. 609(a); **see also Commonwealth v. Harris**, 884 A.2d 920, 925 (Pa. Super. 2005) ("Robbery and burglary are considered *crimen falsi* and convictions for those offenses are admissible for impeachment purposes").

Here, in rejecting this claim, the PCRA court reasoned:

> Trial counsel testified at the time of [the PCRA] hearing that [Lucas's] burglary conviction in question was so removed in time that it would not have been relevant or admissible.
>
> A review of Pa.R.E. 609 addresses the limitation on using evidence after ten years[.[2] Trial] counsel correctly anticipated that the court would not permit introduction of the conviction due to its prejudicial affect clearly outweighing any probative value at this time.
>
> This issue has been addressed by Appellate Courts where they have found no ineffectiveness of counsel when trial counsel did not seek admission of a Commonwealth witness's eleven year old theft conviction. ***Commonwealth v. Treadwell***, 911 A.2d 987 (Pa. Super. 2008).
>
> In the instant case, [Lucas's] conviction at issue was nearly thirty years old. The court specifically finds that trial counsel had a reasonable basis for not pursuing the impeachment of [Lucas] with a thirty-year-old *crimen falsi* conviction.

PCRA Court Opinion, 8/14/20, at 9 (unnumbered) (footnote added; some capitalization and numbering omitted).

_____

[2] Rule 609 states:

> [I]f more than 10 years have passed since the witness's conviction or release from confinement for it . . . [e]vidence of the conviction is admissible only if:
>
> **(1)** its probative value substantially outweighs its prejudicial effect; and
>
> **(2)** the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Pa.R.E. 609(b).

The PCRA court's analysis is again supported by both the record and prevailing legal authority, such that we discern no abuse of discretion in its determination regarding trial counsel's ineffectiveness.

Consistent with the foregoing, the PCRA court did not err in denying Appellant's first PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/15/2021